Good morning and may it please the court. Good morning. My name is Gregory Dubinsky on behalf of Biz Clinton. With me is Evan Stein. With the court's permission, I'd like to take three minutes for rebuttal. Are you all doing this pro bono? Yes, sir. We thank you for your pro bono efforts. We are very grateful as a court for advocates who take their valuable time to help people who need that help. So thank you for your assistance. Thank you, Your Honor. And your home base is in? New York. And how did you find out about our pro bono program? I have friends who clerked on the Ninth Circuit and who recommended it to me. And it's an honor, of course, to come here. And of course, there's no need for pro bono services in New York. I'll gladly take those in New York as well, Your Honor. The errors in this case, Your Honors, is plain. Ms. Clinton set forth a variety of meritorious First Amendment retaliation claims that were improperly dismissed at various stages of the case. Most egregiously, at trial, Ms. Clinton appeared prepared to present her claim that Officer Cooper retaliated against her by failing to honor a medical order to provide her with necessary items in retaliation for her filing of grievances, including her report that she was a rape victim. However, as soon as she began to present that argument, the district court cut her off, excused the jury, and informed Ms. Clinton that, quote, retaliation as applied to this defendant does not apply. Now, although the record was certainly a lengthy one and the confusion by the district court was understandable, that was a plain error. The summary judgment brief that Ms. Clinton submitted plainly urged that under the First Amendment, the magistrate judge, in construing that claim, construed it as a First Amendment claim. And those findings and recommendations were adopted in full by Judge Carlton, who was the previous judge before Judge Mendez was assigned. After that claim survived summary judgment – yes, Your Honor. Let me just ask you, on an overall basis, are you also claiming that the grant of summary judgment in favor of DeSantis should also be reversed? That's our position, yes. Although we believe the Court is better focused on the claims against the other. Right. The other was – I get – I get your point. Those are much clearer. But with respect to DeSantis, what's your best argument that that summary judgment should be reversed? Our best argument is that the complaint fairly presented the argument that DeSantis had placed her in protective custody. And the record shows that the avowed basis under which she was placed in protective custody or in administrative segregation was false even by DeSantis's own recollection, as attested to at summary judgment. But I thought she – she termed it, in quotes, protective custody, and then she understood that it was for safety reasons. Isn't that in the record? Her claim at – in deposition that she thinks she needed to be segregated in order to be protected is in the record. But as this Court has said, even if – and I think it was Bruce v. Yilfs – even if a plaintiff ended up where arguably they should have – and in that case, I think segregation was also at issue – if the placement in segregation was merely pretextual and it was done as a – as an attempt to intimidate or silence or stifle the plaintiff, that is enough to proceed under the First Amendment. Here, what we have, in addition to the comment you've referred to, which, by the way, should be taken merely as her own personal view rather than, for example, the view of a penological expert opining on what was necessary in her particular case, but in addition to that, what we have is the actual administrative segregation form which said that she was viewed as a threat to the safety and security of the institution. But that's only because she was a rape victim who was attacked in a prison where there were racial tensions such that any sort of encounter between inmates could cause potentially even a riot. Correct me if I'm wrong, because I have a lot of empathy for this woman, but I – so I understand that this is a transgender woman. Yes, Your Honor. And she was raped. She goes to this new facility, and this de Santis, who's fairly high up in the system, makes a determination that, at least as he said, for her protection – she understood that for her protection, she's put in administrative segregation. Now, she may have changed her mind after that, but is that a – penologically? I mean, sadly, in our penological system, people who are gender unspecific sadly suffer a lot. So is this a – was this really illogical on his part? How can there no – how can there be no penological basis for it? Right. So two points quickly, Your Honor. So first, there were two placements at issue, one in which she was placed in administrative segregation pending the investigation of the rape. The second placement was the one where the form indicated that she was placed there because she had created tensions between the black and white inmates at Trinity River and that, therefore, she was viewed as a threat to the safety and security of the institution. It's that latter placement that's at issue. And that was de Santis' decision? That's right, Your Honor. His name is – appears on the form, and that was de Santis' decision. Did he back it up in any way? To our – best of our knowledge, no, he didn't back that up in any way. And he also said at summary judgment that he was aware that she had been attacked. So as this Court has said, where there are inconsistencies and contradictions in the officer's testimony, that is probative of intent. But the second point, Your Honor, is that, as I – as we said earlier, the Court, I think, is better focused on the other claims. This is – yeah, that's – yeah, please. And so as I've said as to Cooper, the complaint squarely alleged, and all parties prior to the trial understood, that Cooper was being sued for retaliating against Ms. Clinton under the First Amendment. Indeed, the Court need not take my word for it. The State's own pretrial filing at ER-123 states plainly that Ms. Clinton alleged that Officer Cooper failed to honor the medical chronos, quote, in retaliation for plaintiff-filing grievances. The State then went on to brief those allegations and the standards under the First Amendment as to retaliation claims. As to Officer Scherer, the district court ruled at the motion-to-dismiss stage that Ms. Clinton had not alleged that Officer Scherer had participated in any retaliatory action. But that – yes, Your Honor. Sotomayor, could you clarify for me what the conduct was that she is claiming was retaliatory? Sure. On the part of Officer Scherer, it's – there's three separate allegations. The first one is that Officer Scherer threatened her into signing a forced attestation that her rapist was not her enemy. He said, according to the complaint, that if she did not sign, she would be transferred and she would lose her ability to earn early release work credits. So you're saying that he – by that very act, he retaliated against her for reporting the rape. That's correct, Your Honor. And this Court in Brodheim v. Crye said explicitly – many decisions of the Ninth Circuit have said that the mere threat of an adverse action, even if it is not followed through upon, is enough to state an adverse action for purposes of a First Amendment retaliation claim. And the complaint is far afield from the sort of conclusory allegations that don't withstand Twombly. The complaint says squarely that if – that Scherer ordered her to sign it, and if not, she would be transferred. Okay. That was Scherer. What about Cooper? Yes. With Cooper, it's the failure to honor chronos that entitled Ms. Clinton to a warm rape. Now, the reason she needed the blanket and the shoes is because she alleges that Officer Dixon, also in retaliation for her filing of grievances, intentionally introduced frigid, unsafe air into her cell during the winter. And so what she alleges, and it's really squarely presented in the complaint in our view, is that Cooper was aware of her grievances, and she testified to this in her deposition. He was aware of her grievances. He was aware of the chrono. Indeed, one of the exhibits introduced at trial is an acknowledgment by Officer Cooper of receipt of the chrono. Well, the reason, as I understand it, the district court dismissed the claim – claims against Dixon was an alleged failure to exhaust administrative remedies, not – not that they hadn't stated a claim. That's right, Your Honor. I was merely responding to Judge Schroeder and explaining what the need for the blanket was and why it caused her serious injury. As – as Judge Rakoff has indicated, the allegation against Officer Dixon was also sound retaliation, but the ground for the dismissal by the district court was failure to exhaust, and we believe that's also mistaken. The district court excused failure to exhaust as to other defendants as to whom Ms. Clinton also alleged she was unable to file grievance forms, so there's no basis upon which to distinguish Dixon. The State sort of, if I may say so, concocts a – a supposed reason. The district court might have ruled that it was not exhausted, but a couple points on that. Failure to exhaust is an affirmative defense as to which the State bears the burden. So that's point number one. Point number two, if you read Ms. Clinton's briefing on the motion to dismiss, it's quite clear that she says that the grievance was not available to her as a practical matter. That's enough, as this Court has stated many times, including in Albino, to withstand a motion to dismiss. Can I shift our focus just for a minute? Did the district court ever rule on Clinton's initial motion to accept her handwritten diary? I don't believe it did, Your Honor. Okay. And how – how did – how did her allegation regarding the absence of a legitimate penological interest, how does that play against her claims in Scheer and DeSantis? We talked about DeSantis. What about Scheer? So as to Scheer, I think, and this is discussed in our briefs as well, and I believe it's in Tommel v. Hawaii in which the Court said that a plaintiff may implicitly plead the lack of a penological interest by alleging conduct that can serve no valid penological interest. There can be no valid penological interest in our view, Your Honor. And an inmate's forced attestation upon threat of removal or transfer to administrative segregation that her rapist is not her enemy. And so we think that Ms. Clinton has implicitly pleaded that element as to all of the various defendants in the case. So we can, in effect, impute that? I believe it can be imputed or fairly inferred from what the allegations are. And I don't think it needs to be separately and expressly argued. And I believe under sort of any reading of the complaint, that has been met. Now, as to Officer Scheer, the other two points that Ms. Clinton alleged were retaliatory, the other two actions were his participation in the retaliatory transfer from camp. And I think that's fairly inferred from the complaint, which recites a narrative. The narrative is, Scheer threatened Ms. Clinton into signing the what's called the non-enemy chrono. And if she didn't, she would be punished. And the complaint says, although she in fear complied with that request, she was, quote, still transferred from Trinity River to Susanville. There's no way to read that narrative in our view, Your Honor, as saying that notwithstanding her compliance with Scheer's request, he still participated in the transfer from Trinity River. And indeed, if the Court does see fit, we don't think the Court needs to look to the prison diary in order to find for Ms. Clinton. But if the Court does do so, it's quite pellucid from the diary that Scheer told Ms. Clinton expressly, quote, I've got to roll you up. Sotomayor. Before you leave, though, could you talk about Cooper? Sure. Because that went to trial. Indeed, Your Honor. Yeah. So as we've said, the retaliation claim against Officer Cooper was that he refused to honor those chronos for a blanket and ten issues. Now, at trial, the district court appears simply to have been confused and to have misread the record. The Court's view was that no live retaliation claim existed in the case. But that's belied by the pretrial order, the pretrial submissions, Ms. Clinton's summary judgment brief, and, indeed, the magistrate judge's room. So deliberate indifference to medical needs. Exactly, Your Honor. Exactly. Precisely. And so what he told Ms. Clinton was that retaliation, quote, retaliation as applied to this defendant doesn't apply, and retaliation isn't part of this case. And the State argues And she says, I thought it was. She says he expressly asked her, do you have a theory of the case under which he retaliated against you, and she said, yes. He said, is that your view, and she said, yes. Now, the State points to a later snippet of the transcript in which she said she would, quote, just do what is asked after the district court continued to question her about what evidence she intended to present. Our view is that should really be read as nothing more than what she viewed as an accession to what the district court had already determined, which was that the retaliation claim was not in the case. I want to save any time for rebuttal. I would love to. Thank you, Your Honor. Okay. Good morning, counsel. Good morning, Your Honors, and may it please the Court. Deputy Attorney General Kaitlyn Ross for defendants. First, I will address how Ms. Clinton abandoned her retaliation claim when she went to trial against Officer Cooper. Then I will address how the district court correctly granted summary judgment for DeSantis and correctly dismissed Shearer and Dixon. We were just talking about the trial that happened with Ms. Clinton going against Officer Cooper, and there was confusion initially about what claim was in play. And I think the way that we look at this is that the district court did exactly the right thing. After there was a mistake as to whether or not retaliation was in play, the court didn't order retaliation was out. Instead, the court did the right thing. The court asked Ms. Clinton to explain what her claim was. At this point, she started to describe that she had a retaliation claim. The court then went on and asked her to explain what that retaliation claim was. And the court was very clear, and this is at ER 11. Again, let's make sure the record is clear. I'm not telling you what I want you to say. He wanted Ms. Clinton to explain what her claim was, and she started to explain it. There was some colloquy between the court and Ms. Clinton, and eventually, in response to a question that the court had about what her claim was for retaliation, she responded, to be honest, I can't even remember anymore.  That was probably quite credible. She said it in open court. And at that point, we still don't have this instance where the court actually ordered her not to bring retaliation. Even after that, even after she made that concession that she didn't know what her retaliation claim was, the court at ER 13 specifically said, let's make sure the record is clear. It's not what the court wants. The court is trying to figure out what her claim is. Did she have standby counsel? She did not have counsel below. Was there a standby counsel? I'm not aware of that. So after she said What do we do? Obviously, she's pro se. How does that play into this particular case? Obviously, a lot of different settings. But in this case, she goes to trial. She has this colloquy with the judge, which didn't end well for her. But she's pro se. What flexibility do we give in that situation? I think the court below showed flexibility by expressing not once, but twice, that it was not ordering her anything. It was trying to figure out what she wanted to do. But at the end of the day, Ms. Clinton is the master of her claim. And if she wants to go to trial and wants to prove a civil rights violation against Officer Cooper, the bare minimum you've got to do is present the evidence. And she didn't even say that she knew what evidence she would present. She said she didn't remember. The court reminded her that it was trying to figure out what she wanted. The court wasn't ordering her. And then she presented. At this point, it looks like everybody was confused. There was definite confusion in the beginning. There's no denying that. But by the point where Ms. Clinton said that she didn't know what her claim was, and then she proceeded to go to trial, and she didn't present any retaliation evidence. So at that point, she's made the decision to abandon her retaliation claim. She proceeded on deliberate indifference. If the judge, instead of just questioning this pro se plaintiff, had looked at the record, the judge would have seen the retaliation claim set forth in the prior proceedings, yes? And the complaint and the determinations before trial and so forth. Wouldn't that be the more sensible thing for the judge to do, rather than have a colloquy with a pro se plaintiff who's not versed in the law, as you indicate he did? I think what the judge was trying to do at this point was to clear up what exactly she was planning on presenting at trial. And she was able, if she wanted to, she could have presented retaliation evidence. When she told the judge that she didn't remember any more, that might have been an indication that she didn't have any, or that she didn't know what she was going to say. But the district court did the appropriate thing when it gave her the opportunity to explain what her claim was, and most importantly, gave her the opportunity to go to trial. They brought the jury back in. She was allowed to present evidence. There's no ruling that she couldn't bring in retaliation evidence. She just didn't do it. And it's not surprising, given that she said that she didn't remember what her claim was. Let me change the subject a little bit. Do you think we should remand to the district court to consider whether Clinton adequately stated her claim against Dixon if we find that the court erred in dismissing her claim for failure to exhaust? We think that as we understand that the district court ruled on the exhaustion issue. Right. But the first. And again, arguendo, if we conclude that the claim was exhausted, what should we do? Remand it to the district court to consider her claim against Dixon? I think you can look at the face of the complaint right now, the third amended complaint, and it just shows that she didn't state a retaliation claim against Dixon. This was, at this point, her third opportunity to amend her complaint. Right. Her third opportunity to amend her complaint. And she had received not one, but two specific instructions from the district court that she needed to specifically allege the facts that undergirded her civil rights claims against these defendants. She couldn't rely on generalizations. She had to specifically say what each defendant did. She had the instructions. She got those instructions twice. She just didn't do it. The same issue applies with Sergeant Scheer. There's no statement of the elements of retaliation in the complaint against him. And we've, again, had three opportunities to get here. And this is also somewhat related to the Lieutenant DeSantis issue, which just to clear up some what might have been confusion we had earlier. DeSantis, unlike Dixon and Scheer, DeSantis went to summary judgment. But the complaint against DeSantis also reads in deliberate indifference. It doesn't state a retaliation claim. For that reason, the summary judgment motion was based on deliberate indifference. And it happens that the evidence that was used to support the deliberate indifference claim, which Your Honor referred to, the deposition testimony, in effect, even if she had properly made a retaliation claim in the complaint, which she didn't, the evidence that was in the deliberate indifference summary judgment motion, the deposition testimony, shows that there's no dispute that there was legitimate penological interest for what happened to her. She thought it was the right call. Following up on a question that Judge Schroeder had at the very beginning, and there may be nothing in the record about this, but I'm just curious, it's certainly not uncommon in cases where a non-lawyer goes to trial to have standby counsel appointed so that the pro se party is at least as available to them as someone who can tell them about the law and what they would be waiving, what they would not be waiving, and things like that. And I take it that that was not done in this case. Do you know if that was offered in this case? I'm not aware of whether or not that was offered. I want to address one point. There was some brief discussion about the diary, the diaries. There's two in the record, one's typed, one's handwritten. Defendants would just reiterate that the diary, neither version, is an appropriate item to consider as to whether they bolster the allegations in the complaint. It's telling in the opening brief, and even in the reply brief, that there's so much reliance on the allegations, not the allegations, the claims and the language in the diaries, and we can't go outside the four corners. The diaries weren't attached to the complaint, they weren't incorporated by reference, they weren't referred to, and there's just no reading that we can allow those extraneous documents to be considered when considering the motion to dismiss. There are no further questions. At trial, Ms. Clinton abandoned her retaliation claim, and she didn't state retaliation claims in her complaint against the other three defendants. The district court should be affirmed. Thank you. All right, Mr. Pro Bono counsel, what do you have to say to that? A few points. You're not standby counsel, you're stand up counsel. I hope I'm stand up. So just a few points, Your Honors. So just to respond to your question, we looked at the docket and she did move, she did request appointment of counsel or referral to a pro bono clinic, that was denied. So just to attribute us to that. Now, as to what occurred at trial, there's really no doubt, I think, from the transcript that what occurred was that the district court misread the filings, misread the record, and determined as a matter of law there was no retaliation claim live in the case. And that this was pure and simple error. The State understood that there was a retaliation claim in the case. It extensively briefed it in its pretrial submissions. And what the district court did was, as soon as the issue of retaliation was mentioned, it excused the jury and instructed Ms. Clinton that retaliation as applied to this defendant does not apply. So I don't think abandonment on these facts would be in accordance with the solicitude that this Court offers to pro se litigants in complying with the niceties of procedure and practice. Ms. Clinton, under, after being told there was no retaliation claim, she did two things. She raised Magistrate Judge Callison's orders, which expressly discussed the existence of the retaliation claim. And she told the judge that her theory of the case included a retaliation element. The fact that she later said she would, quote, just do what is asked, I think, is light years away from the kind of voluntary and intentional decision to abandon a claim at trial. Let me ask my colleagues, do either of you have additional questions for counsel? All right. I think we're set, but thank you again very much for your pro bono involvement. We really appreciate it. The State appreciates it, too, right? I thought so. In any event, we're grateful that the case just argued is submitted.
judges: Schroeder, M. Smith, Rakoff